IN CHATHAM SUPERIOR COURT, JULY, 1832.

CHARLES A. HARDEN *et al.* complainants, and ELIZA MILLER administratrix of MORRIS MILLER, defendant.

## In Equity.

On sale of landed estate the purchase-money becomes a debt on the personal estate, and the equitable lien ought to be extended to only so much of the purchased estate as the personal estate is insufficient to pay: The purchase-money is not an original charge upon the landed estate, but only an equity to resort to it, in case the personal estate should prove deficient:

But notwithstanding the admission of these principles, there is no authority

THE bill alleges the existence of an agreement made and entered into, between Henry Harden deceased, the intestate of the complainant Maxwell, and the father of the other complainants, and Morris Miller deceased, whose representative the defendant is. By the terms of which Miller agreed to purchase from Harding, a tract of land to be paid for, by the assumption on the part of Miller of the payment of a judgment held by the Messrs. Bottons against Harden. In pursuance of the agreement, Miller was put into possession of the land, and preferring the sheriff's title, he had the land levied on and sold under the same judgment, and Miller bid it off at the price of $400—that this sum was paid to the Messrs. Bottons, and that Miller died without having paid the balance of judgment. That the Bottons apprehending the insolvency of Miller's estate, have forced the payment of the balance from Harden's estate—that the complainants have a lien on the land for such balance, and pray that the defendant may be decreed to pay said balance, or the lien declared, and the land be sold for that purpose.

To this bill a general demurrer has been filed. In support of this demurrer, it is insisted that the bill does not allege assets come to the hands of defendant, nor charge the insolvency of Miller's estate; that for any thing apparent from the bill, the plaintiffs have all the testimony necessary to enable them to proceed at law—that their proper remedy is at law by action of assumpsit.

The general rule is that whenever a case is made in which a Court of Equity gives relief, the bill cannot be demurred to for want of equity; but where no sufficient ground is shown for a Court of Equity to interfere, the defendant may demur for want of equity in the plaintiff's case to support the jurisdiction of the court.

The bill charges, that upon the death of Mr. Miller the defendant, his widow assumed the administration of his estate; and has ever since been in the enjoyment and possession of said tract of land. There is no allegation of the insolvency of Miller's estate, other than as connected with the motive of the Bottons in resorting to Harden's estate. But the idea, that before a vendor can come for a lien for unpaid purchase-money, he must show that the personal estate has been exhausted, cannot be supported to the extent for which the counsel contends. It is true the plaintiff cannot have a decree for a lien if there are personal assets to discharge the debt; and this is on the principle laid down by Sugden on Vendors, that on sale of an estate, the purchase-money becomes a debt on the personal estate, and the equitable lien ought to be extended to only so much of the purchased estate as the personal estate is insufficient to pay. It is not an original charge on the estate, but only an equity to resort to it, in case the personal estate prove deficient. But notwithstanding the admission of these principles, there is no authority for requiring the vendor first to obtain judgment at law and a return on his execution as preliminary to his application here—the object for coming here is to obtain an account of the personal estate, and a decree for payment, if it may be so; otherwise, that the lien be declared and the land sold.

This is in conformity with all the cases. In the case of Pollexfen v. Moore, the plaintiff brought his bill against the representatives of the real and personal estate of Moore and Kemp to be paid the remainder of the purchase-money. The Chancellor declared that the remainder of purchase-money ought in the first place to be paid out of the personal estate of Moore, and if that were insufficient, that it should come out of the purchased estate. 3 Atkyns, 273. In the case of Hughes and Kearney at the hearing, an account of the personal estate of Kearney the purchaser was directed, and it being reported that he left no personal estate, it was decreed that the purchase-money was a charge upon, and to be raised out of the purchased land. 1 Sch. and Lef. 132. The

16

CHATHAM,
July, 1832.

HARDEN et al.
and MILLER
Administratrix.

for requiring the vendor, first to obtain judgment at law and a return on his execution as preliminary to his application to a Court of Equity to obtain an account of the personal estate, and a decree of payment, if it may be so, otherwise that the lien be declared and the land sold.

CHATHAM,
July, 1832.

HARDEN et al.
and MILLER
Administratrix.

court is referred to the case of Garson *v.* Green *et al.* 1 John. Ch. Rep. 308. in which Chancellor Kent says "The failure of the personal estate is sufficiently shown in the first instance; and there is nothing to gainsay it, and I shall accordingly decree a sale of the one third of the house, &c." In that case the seller had taken a note and brought an action upon it against the purchaser's administratrix, she pleaded plene administravit and he took a judgment for assets *in futuro.* The amount of the case is, the facts which appeared rendered further inquiry into the personal estate unnecessary, and authorized an absolute decree at once for the sale of the house. In the case of Mackay *v.* Green, the same chancellor says, the personal estate is the first and primary fund for the payment of debts, and the plaintiff ought to have resorted, at law, to that fund. But it will be remarked, that he had declared the notion of an equitable lien, under the facts of the case entirely without foundation; and then the only question was, whether as a mere creditor seeking an account of assets, the plaintiff was properly before the court. He can only come here, says the Chancellor, for an account and discovery of assets, and on the ground of a *trust* in the executor or administrator to pay the debts.

The bill is not intended for that purpose, but only to enforce a sale of the land by reason of the supposed lien. In determining the validity of this demurrer, the court is bound to consider the whole relief sought, and if any part is due, the demurrer must be overruled. In England the Courts of Chancery constantly assume jurisdiction in cases against executors or administrators. It is not proposed to affirm such a jurisdiction here without any qualification; but when there is some special cause, some ground of relief to which he may be entitled and which this court alone is competent to give, he may come here in the first instance. Such is the situation of this case, and the plaintiff's right to equitable relief may very much depend upon the circumstances which will be disclosed by the evidence. A demurrer must be founded upon some certain and absolute proposition, some dry point of law, from which it appears that under no circumstances at the hearing could the plaintiff obtain a decree.

It is therefore ordered that the demurrer in this case do stand overruled.